David Arden Robart, *Pro Per*
Post Office Box 172
Alpine, Arizona [85920]
928-245-4913
E-mail: dinkrobart@yahoo.com



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

DAVID ARDEN ROBART
Plaintiff

CASE NUMBER: CV21-08180-PCT-DWL

APACHE COUNTY SHERIFF'S DEPARTMENT
SHERIFF JOSEPH DEDMAN JR.
DEPUTIES JOHN SCRUGGS, DAVID PADILLA
AND LEONARDO PRIETO
Defendants

COMPLAINT:
Title 42 Section 1983 Federal Statutes
Civil Rights Violation of the
Fourth Amendment pertaining to
search and seizure
Due Process Title 42 USC 1983
Title 18 USC 241-242

## JURISDICTION

This court has jurisdiction in this matter under Title 42 Section 1983 Federal Statutes

## COMPLIANT

I, David Arden Robart am seventy seven years of age, born and raised in Arizona where

my family ranched and farmed. I have been living in Alpine, Arizona in the Blue River area

since 1984 and am a Veteran. My Code of Colors has been violated.

My character and name have been run through the National Crime Information Center.

There were NO WARRENTS, WANTS OR CRIMINAL RECORDS attached to my name.

The evening of March 4, 2020 I went to the Ye Olde Tavern in Alpine, Arizona around

18 hundred hours. While there, I observed a patron by the name of Dana Jean Bennett

who I have known since she was a teenager.

She was standing at the bar and I watched her consume 4 shots of what appeared to be hard liquor one right after the other. She appeared to be irritated with her boyfriend who was playing pool. She left the tavern about 19 hundred hours. I left about one hour later.

The following day I returned to the Ye Olde Tavern around midday to dump two bags of trash in the dumpster to the back and right hand side of the building taking me about two minutes. I had an agreement with the owner to my dump trash. Upon exiting the premises I noticed Dana's pick up parked in the back parking lot in what appeared to be the left hand corner of the rear parking lot.

Later that day I approached the intersection of Highways 180 and 191 which faces the Ye Olde Tavern and the Alpine Real Estate Office. At that time I observed yellow crime tape, several volunteer fire personnel, fire trucks and several Sheriff's vehicles.

I crossed the intersection and parked in front of the Real Estate Office and observed Beulah Litterini who is the secretary of the Real Estate Office. I dismounted my vehicle and asked Beulah what was going on? She said, Dana had just been found dead in the driveway of the tavern on the left hand side up against the partition fence separating the buildings of the tavern and the Tackle Shop Gas Station. Attachment 1

At that time I noticed Deputy David Padilla just on the other side of the yellow crime tape. I hollered at him and told him I had been there the night before March 4, 2020 and again the following day March 5, 2020. He said he would talk to me later.

March 6, 2020 Deputies Scruggs and Padilla asked if I would go to the Forest Service Office for an interview around 18 hundred hours. I met with them attempting to act as a good citizen and tell them what I observed on March 4, 2020 thinking it might help them in Dana's death.

To my astonishment they read me my rights. I agreed to continue to talk with them based on the fact I knew I had nothing to do with her death. Again, I told them I witnessed her activities on March 4, 2020 in the tavern and that I had driven through there midday to dump 2 bags of trash in the dumpster on March 5, 2020. The tavern owner, William Woesner informed me the deputies had gone through the trash I had dumped. Attachment 2

I told the deputies I did not observe Dana's body in the driveway of the tavern when I had dumped my trash but did see here pickup there. They made several crude remarks about my eye sight and asked if I wore glasses. I said, if she had been there when I dumped the trash I would have run over her. This interview lasted about ten minutes and was recorded.

March 7, 2020 at approximately 1830 hundred hours I fed horses for a friend of mine. Upon returning home I noticed several Sheriffs vehicles parked in the parking lot of the Forest Service Office. They flagged me down as I approached the intersection and told me to go into the parking lot of the Forest Service Office.

I was in my 1995 Chevy Blazer. Upon dismounting my vehicle Deputy Scruggs asked if I would come into the front office of the Forest Service Office. They immediately did a pat down search. I asked what this was about and he said he wanted to know if I was armed.

They said they had a search warrant for my DNA, vehicle, home and outbuildings. One deputy attempted to swab my mouth for DNA who was unfamiliar with the process, so I took the swabs from him and did it myself and returned the swabs.

They handed me the search warrant. A couple of deputies inventoried my personal belongings in my vehicle. By this time I was very upset and told them that I did not want them taking my vehicle until they returned to me my two weapons a 20 gauge shotgun and a 38 caliber pistol.

Deputy Scruggs made a phone call I think to Joseph Young Deputy County Attorney. Who ever it was, told them to surrender my weapons to me. They took them from my vehicle and placed them in the back seat of Deputy Padilla's vehicle. I rode with Deputy Padilla to my home.

Upon arriving home, a couple deputies walked around my property in the dark with their flashlights on. Deputies Scruggs and Padilla entered my home with me, the lights were already on but they turned on their flashlights anyway and looked around for about two minutes. I told them to take my weapons out of Deputy Padilla's vehicle and place them in my work truck a 1978 ¾ ton Chevrolet Pickup which they did without hesitation.

I find it strange, they returned weapons to someone they are investigating for a kidnapping, rape and murder. At that time they broke all police protocol. They failed to identify the weapons and run the serial numbers to determine if the weapons were stolen or ever used in a crime.

Did they really suspect me of a crime? Was there some other nefarious reason such as harassment? It seemed odd to me that these acquisitions of kidnapping, rape and murder would be made two days prior to the autopsy confirming the cause of death and to run a rape kit.

From the Clerk of the Court I obtained a copy of the Affidavit they used to get the search warrant. Deputy Prieto in his opinion said the deceased had been beaten and sexually assaulted.

Had the deputies bothered to do their do diligence / detective work they would have found these injuries were consistent with Bennett being under the influence of drugs and alcohol based on a previous incident the year before on August 30, 2019.

She consumed enough alcohol in celebrating her birthday (8-30-1976) blacked out and was found underneath the Alpine Fire Chief's vehicle in a gravel driveway. After coming to she went to the Bear Wallow Café where several patrons observed her with cuts and bruises and appeared to be disorientated. One of the patrons gave her a ride home.

The Forensic Pathologist Gregory Hess, MD and Dr. Ashley Lukefahr of the Pima County Medical Examiner's Office performed the autopsy and say the manner of death is accident. The cause of death is ascribed to hypothermia with recent ethanol and methamphetamine consumption. The neck was normal no hyoid bone broken, the skull was without fracture, no hemorrhage inside or out, no ligature marks, the brain free of abnormality, certain orifices were of a normal adult female nothing remarkable and free of lesions.

The toxicology report lists a blood alcohol content of .113 (impairment for driving purposes is presumed to be .08) The test was positive for methamphetamine. Bennett also suffered from emphysema, mild heart disease and a fatty liver. (March 9, 2020) Attachment 3

March 7, 2020 (Saturday) a search warrant was issued for David Arden Robart.

March 9, 2020 (Monday) Bennett was seen by a medical examiner. Within two weeks they had determined the manner of death was accident. The cause of death is ascribed to hypothermia with recent ethanol and methamphetamine consumption. The terms kidnapping, rape and murder were definitely premature.

**The FOURTH AMENDANT to the UNITED STATES CONSTITUTION states:**

**"The right of the people to be secure in their persons, houses, papers,**

**and effects against unreasonable searches and seizures, shall not be violated,**

**and no warrants shall issue, but upon probable cause, supported by Oath**

**or affirmation and particularly describing the place to be searched and the**

**persons or things to be seized."**

Deputy John Scruggs was the ranking officer on the scene. Prior to obtaining the search warrant, he confided in two local residents saying that he believed there was no foul play in this incident.

Two of the first responders are retired peace officers working as volunteers for the Alpine Volunteer Fire Department.

1) Bill Johnson a retired Lieutenant from the Phoenix Arizona Police Department having 42 years experience. He has recently served as interim Chief of Police in St Johns, Arizona. Attachment 4

2) Jeff Walther recently retired after 25 years as Chief of Police in Scottsdale, Arizona. He has been recalled back to service as Chief of Police with a five year contract. Attachment 5

Both of these officers are willing to testify that there was insufficient probable cause to classify this unfortunate incident as kidnapping, rape and murder absent of finding of fact by a medical examiner as the cause of death. Together they have 67 years of experience and are well qualified to have this opinion.

In order to obtain a search warrant not only did Deputy Scruggs speculate about the time on the video but also claims he observed my vehicle. Deputy Prieto made wild speculations of kidnapping, rape and murder which had no basis in fact and did not provide sufficient evidence for probable cause. Wild speculation having no basis in fact does not provide for sufficient probable cause to obtain a search warrant.

Deputy Scruggs states there were approximately two minutes Mr. Robart was not in view of the video camera. Deputy Scruggs stated to Deputy Prieto that this was on or about 11:00 a.m. In a capital crime there can be no room for discrepancy. The time dated on the video was 12:14 to 12:15. Deputy Scruggs is one hour and fourteen to fifteen minutes off.

In the Affidavit for the search warrant signed by Deputy Leonardo, Deputy Prieto states Deputy Scruggs says he viewed the video showing David Robart in his 1995 Chevrolet Trail Blazer entering and exiting the driveway and rear parking area of the Ye Olde Tavern in Alpine, Arizona.

A law enforcement officer who files a warrant that contains intentionally or recklessly false statements of fact usurps the constitutionally mandated role of the Magistrate. This officer deprives the Magistrate of the truthful information necessary to make an independent and informed decision regarding probable cause.

The nature of the assessment of whether probable cause exists further emphasizes the harm done to the targets of such police in intrusion, many of whom are entirely innocent and to the Fourth Amendment Right itself.

Sheriff Joseph Dedman Jr. is listed as a defendant because he is responsible for the supervision and training of his deputies.

## DEMAND

Based on the lack of evidence at the scene and the medical examiners report there was insufficient probable cause to serve a search warrant, seize a vehicle (hold it for 137 days), search my home, search my outbuildings and request a DNA test.

The Deputies knew within two weeks of the investigation that my vehicle and myself were not involved in this incident. Why did this harassment continue?

This is a blatant violation of my Fourth Amendment Right and defamation of my personal character not to mention the articles in the newspapers and on the internet.

1) I demand first and foremost that my name be removed from the public record as a defendant in this case.

2) I further demand that Deputy John Scruggs the ranking officer who has sufficient time as a deputy to draw his retirement be dismissed as an employee of the Sheriffs Department.

3) I further demand that Deputies Leonardo Prieto and David Padilla be disciplined and given remedial training.

4) I also demand a letter of apology from Sheriff Joseph Dedman Jr.

5) I demand the sum of $250,000.00 in damages for violating my Fourth Amendment Right in relationship to search and seizure, lacking probable cause and defamation of my character by implementing me in a kidnapping, rape and murder that never happened.

Witness List
JOSEPH YOUNG-DEPUTY COUNTY ATTORNEY
DEPUTIES JOHN SCRUGGS, DAVID PADILLA, LEONARDO PRIETO
BEULAH LITTERINI, WILLIAM WOESNER, BILL JOHNSON, JEFF WALTHER

David Arden Robart, *Pro Per*
Post Office Box 172, Alpine, Arizona [85920]
928-245-4913 / E-mail: dinkrobart@yahoo.com

Date Filed_____